OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Justine Michael, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.


     The State ex rel. Markulin v. Ashtabula County Board of
Elections.
     [Cite as State ex rel. Markulin v. Ashtabula Cty. Bd. of
Elections (1992),     Ohio St.3d    .]
Elections -- Mandamus to compel board of elections to certify
     relator's nominating petition and place her name on
     general election ballot as candidate for judge -- Writ
     denied when relator is a "non-qualified elector" and a
     "non-qualified circulator elector."
     (No. 92-1864 -- Submitted and decided October 22, 1992 --
Opinion announced December 9, 1992.*)
                         In Mandamus.
     On August 20, 1992, relator, Katica Markulin, a licensed
attorney and resident of Euclid, Cuyahoga County, Ohio, timely
filed with respondent, the Ashtabula County Board of Elections,
a nominating petition and statement of candidacy for the office
of Judge of the Ashtabula County Court, Eastern Division.  The
nominating petition contained a legally sufficient number of
signatures.  Respondent rejected relator's petition at a
meeting held on August 26, 1992.  Relator contends that the
reason given for rejecting the petition was that she was an
"invalid circulator" of the petition.  Respondent contends that
relator is a "non-qualified elector" and "non-qualified
circulator elector," and that it rejected relator's petition on
advice of Attorney Sara Rectenwald of the Secretary of State's
office.
     On September 9, 1992, respondent held a hearing on the
rejection at relator's request and again rejected the petition
because relator was a "non-qualified elector" and
"non-qualified circulator elector."  On September 28, 1992,
relator filed this action in mandamus to compel respondent to
certify her nominating petition and place her name on the
November 3, 1992 general election ballot as a candidate for
Judge of the Ashtabula County Court, Eastern Division.

     Katica Markulin, pro se.
     Gregory J. Brown, Prosecuting Attorney, for respondent.

Per Curiam.   We deny the writ for the reasons that follow.

Relator raises five issues:

(1) That the rejection of her petition violated the open meetings law, R.C. 121.22;

(2) that respondent erred by finding that she was a "non-qualified circulator elector";

(3) that respondent erred by finding her a "non-qualified elector";

(4) that the proceedings surrounding the rejection of her petition were tainted by corruption; and

(5) that to the extent that R.C. 3513.261 imposes a durational residency requirement for independent candidates, it violates the First and Fourteenth Amendments to the United States Constitution.

### Open Meetings Law

R.C. 121.22(H) provides in part:

"A resolution, rule, or formal action of any kind is invalid unless adopted in an open meeting of the public body."

Relator contends that respondent violated R.C. 121.22 by consulting with an attorney from the Secretary of State's office, who advised rejection of her petition, but not discussing that fact at the hearing of August 26, 1992, when it rejected her petition.  She further contends that the only reason given at the August 26 meeting for rejecting her petition was that she was not a qualified circulator.

The original minutes of the August 26 meeting state in part:

"The petitioner was not a registered elector in Ashtabula County.  Chairman Vensel advised he had contacted Bob Taft, Secretary of State, for legal direction.  Legal Section Attorney Sarah Bechenwald [sic] advised the Board that the petition should be rejected due to 'non-qualified elector' and 'non-qualified circulator elector.'   * * *"

Relator submits as evidence a handwritten addendum to the August 26 official minutes, apparently written by respondent's deputy director, which she states accurately describes the August 26 meeting.  The addendum states:

"Additions of comments made during general discussions of board meeting of 8-26-92.

"During the general discussion of the petition for Katica (Kathy) Markulin, Director Hornstien's [sic, Hornstein's] reason for recommending that her petition be rejected was that she was not a qualified elector in this county and that therefore she could not be a qualified circulator of her petitions.  Therefore she did not have sufficient qualified signatures to make her petition valid.  He then cited various sections of the O.R.C.

"Also during the general discussion and questions asked by the petitioners it was brought out that [the] director and deputy director had conferred with their local legal counsel the county prosecutor for clarification of differing sections of the O.R.C.

"Also it was brought out that the Chairman Arthur Vensel had contacted the legal dept. of the Secretary of States [sic] office, without specifically mentioning any name, and they had recommended the [sic] these petition's [sic] i.e., Patricia M. Walsh['s] and Kathy Markulin's be rejected for the reasons

cited in the O.R.C.

"8-27-92

"Ernie Fedor"

On September 8, 1992, respondent amended the minutes of the August 26 meeting to state:

"A motion was made by Arthur Vensel to amend the minutes to officially include the section on background information on section referring to 'Legal Section Attorney Sarah Bechenwald [sic], advised the Board that the petition should be rejected due to non-qualified elector and non-qualified circulator-elector.' * * *"

The handwritten addendum to the August 26 minutes, which is the only evidence relator submits as to the alleged violation of the open meetings law, states that respondent's director recommended to respondent that relator was not a qualified elector. If relator was not a qualified elector, she would not have been an eligible candidate or circulator. Moreover, both the official minutes of August 26 and the handwritten addendum mention contact with the Secretary of State's office. They differ only as to whether attorney Rectenwald's name was specifically mentioned.

Thus, even relator's evidence raises the "qualified elector" issue and gives some indication that the hearing of August 26 included mention of contact with the Secretary of State's legal advisor. Whether the August 26 meeting fully explored both possible reasons why relator's petition was ultimately rejected -- that is, "non-qualified elector" and "non-qualified circulator elector" -- is uncertain, since there is no transcript of that hearing in evidence.

R.C. 3501.05(B) requires the Secretary of State to "[a]dvise members of such boards [of elections] as to the proper methods of conducting elections[,]" and R.C. 3501.11(K) requires boards of elections to "[r]eview, examine, and certify the sufficiency and validity of petitions and nominating papers[.]" Thus, respondent properly sought the advice of the Secretary of State's office. Moreover, we have held that boards may carry out their duties under R.C. 3501.11(K) sua sponte, without notice or hearing to the candidate. Wiss v. Cuyahoga Cty. Bd. of Elections (1980), 61 Ohio St.2d 298, 301, 15 O.O.3d 357, 359, 401 N.E.2d 445, 448; State ex rel. McGinley v. Bliss (1948), 149 Ohio St. 329, 37 O.O. 21, 78 N.E.2d 715. Accordingly, even if respondent did fail to fully explore all the reasons for denying relator's petition at the August 26 meeting, relator was denied nothing she was entitled to. Moreover, respondent granted relator a second hearing on her petition at which she was given full latitude to discuss all issues. Accordingly, we find on these facts no violation of the open meetings law that invalidates respondent's action.

### Qualified circulator

R.C. 3513.261 provides in part that the circulator of a petition must declare "under penalty of election falsification that he is a qualified elector of the state of Ohio and resides at the address appearing below his signature [t]hereto[.]"

R.C. 3503.01 provides in part:

"Every citizen of the United States who is of the age of eighteen years or over and who has been a resident of the state thirty days next preceding the election at which he offers to

vote, is a resident of the county and precinct in which he offers to vote, and has been registered to vote for thirty days, has the qualifications of an elector and may vote at all elections in the precinct in which he resides." See, also, In re Protest Filed by Citizens for the Merit Selection of Judges, Inc. (1990), 49 Ohio St.3d 102, 104, 551 N.E.2d 962, 150, 152-153.

The parties agree that relator has been registered to vote in Cuyahoga County since 1986, and respondent does not dispute relator's age, state residence, citizenship, or address on the circulator's statement. Accordingly, it is clear that she is an elector, which is all that is required to be a petition circulator. Thus, to the extent that respondent invalidated relator's petition for this reason, it erred by disregarding the plain language of R.C. 3513.261.

Qualified elector-candidate

R.C. 3513.261 requires, in addition to being an elector, that a candidate swear under penalty of election falsification that he or she is "qualified to vote for the office he [or she] seeks." Relator crossed out this part of her statement of candidacy on her petitions, and she argues that it cannot create a durational residency requirement for candidates. We hold otherwise, and so find that respondent correctly rejected relator's petition for this reason.

The Attorney General has held that R.C. 3513.261's requirement that a candidate be qualified to vote for the office he or she seeks requires a candidate for county court judge to be an elector of the county court district involved. 1958 Ohio Atty.Gen.Ops. No. 2295. More recently, he has reached the same conclusion with regard to all candidates for county office. 1984 Ohio Atty.Gen.Ops. No. 84-025.

Relator relies on R.C. 1907.13, which states in part:

"A county court judge, during his term of office, shall be a qualified elector and a resident of the county court district in which he is elected or appointed."

She argues that R.C. 1907.13's requirement of residence only during office tenure is a special provision that takes precedence over R.C. 3513.261's general requirement of residency in the district of the office sought, applicable to all candidates. However, in order for this type of analysis to be invoked, the two statutes must be irreconcilable. R.C. 1.51. A general residence requirement for all candidates is not irreconcilable with a specific residence requirement for an elected official during his or her term. The requirements are, in fact, complementary.

Relator also argues that if R.C. 3513.261 does impose a residence requirement, then it violates her constitutional rights to seek public office, vote, freedom of expression, freedom of association, right to trial, and right to equal protection of the law, under the First and Fourteenth Amendments of the United States Constitution.

In effect, R.C. 3513.261 and 3513.263 impose a seventy-five day minimum residence requirement on candidates, because the statement of candidacy and the nominating petitions must be filed with the board of elections at least seventy-five days before the general election, and the candidate must be eligible to vote for the office he or she seeks at the time the

statement of candidacy is signed.  To be able to sign the statement truthfully, a candidate must be registered at an address within the election district at the time the statement is signed.  See State ex rel. Walsh v. Ashtabula Cty. Bd. of Elections (1992), 65 Ohio St.3d    ,     N.E.2d    .

Although a majority of the United States Supreme Court has not stated whether courts should apply the "strict scrutiny" test under the Fourteenth Amendment to durational residency requirements involving a candidate, a four-member plurality has stated that candidacy is not a "fundamental right," and has also stated:

"A 'waiting period' is hardly a significant barrier to candidacy.  In Storer v. Brown [1974], 415 U.S. [724] at 733-737 [94 S.Ct. 1274, at 1281-1282, 39 L.Ed.2d 714, at 725-727], we upheld a statute that imposed a flat disqualification upon any candidate seeking to run in a party primary if he had been registered or affiliated with another political party within the 12 months preceding his declaration of candidacy.  Similarly, we upheld a 7-year durational residency requirement for candidacy in Chimento v. Stark, 414 U.S. 802 (1973), summarily aff'g 353 F.Supp. 1211 (NH).  We conclude that this sort of insignificant interference with access to the ballot need only rest on a rational predicate in order to survive a challenge under the Equal Protection Clause.  * * *"  Clements v. Fashing (1982), 457 U.S. 957, 967-968, 102 S.Ct. 2836, 2846, 73 L.Ed.2d 508, 518-519.

In State ex rel. Brown v. Summit Cty. Bd. of Elections (1989), 46 Ohio St.3d 166, 545 N.E.2d 1256, we upheld a two-year durational residency requirement for city council candidates, holding that the effects on the rights of travel and association were so minimal that they did not invoke the strict scrutiny test under the Fourteenth Amendment and required only a rational basis.  Citing Brown, relator further argues that the policy reasons for imposing durational residency requirements on council members do not apply to judges, because the law is the same everywhere, whereas legislative policy matters may differ, making familiarity with local issues more important for council members.  This argument has some merit, but not enough to persuade us to declare irrational a legislative requirement that would-be candidates must reside among the citizens whose signatures they solicit to become candidates.

Accordingly, we reject relator's arguments based on constitutional and statutory construction and hold that at the time of her signing her statement of candidacy, relator did not comply with R.C. 3513.261's requirement that she be eligible to vote for the office she seeks.

### Corruption

Relator also argues that respondent's decision to reject her petition was tainted by corruption.  The corruption she alleges is that respondent's legal advisor, the prosecuting attorney, is a close personal friend of relator's opponent and should have removed himself from the proceedings.  She submits no evidence, however, as to how this corrupted the hearings, except evidence that an assistant prosecuting attorney circulated petitions for the opponent.  She also cites respondent's refusal to stipulate certain facts, refusal to

answer questions at the hearings, and commingling of her hearings and other protests as further evidence of corruption.

We do review actions of boards of elections in these cases to discover "fraud, corruption, abuse of discretion, or a clear disregard of statutes or applicable legal provisions * * *." (Emphasis added.)  State ex rel. Senn v. Cuyahoga Cty. Bd. of Elections (1977), 51 Ohio St.2d 173, 175, 5 O.O.3d 381, 382, 367 N.E.2d 879, 880.  But corruption, like the other acts mentioned, must result in some unlawful or unconscionable result before a relator has the clear right to relief required for a writ of mandamus to issue.  Here, neither relator's evidence nor her arguments persuade us that respondent was guilty of corruption.  Moreover, in any case, its deliberations did not result in an unlawful rejection of relator's petition, but a lawful one.  She was not eligible to vote for the office she seeks when she signed the petition, and her petition was subject to rejection on those grounds.  On the same grounds, we deny her request for a writ of mandamus.

Writ denied.

Moyer, C.J., Sweeney, Holmes, Douglas, Wright, H. Brown and Resnick, JJ., concur.

*  Reporter's Note:  A writ of mandamus was denied in this cause on October 22, 1992, "consistent with the opinion to follow."  See 65 Ohio St.3d 1438, 600 N.E.2d 681.  The "opinion to follow" is announced today.