THE STATE EX REL. STINE *v.* BROWN COUNTY BOARD OF ELECTIONS.

[Cite as *State ex rel. Stine v. Brown Cty. Bd. of Elections,*
101 Ohio St.3d 252, 2004-Ohio-771.]

(No. 2004–0191—Submitted February 18, 2004—Decided February 20, 2004.)

**Per Curiam.**

{¶ 1} On December 31, 2003, relator, Jeff Stine, filed a declaration of candidacy and petition to be a Republican Party candidate for the office of Brown County Engineer at the March 2, 2004 primary election. Stine claimed to be a resident of Brown County.

{¶ 2} Nine electors filed a written protest against Stine's declaration and petition. They asserted that Stine maintained a permanent residence outside Brown County. The board determined that based on its records, the protestors are all registered members of the Republican Party qualified to protest Stine's candidacy.

{¶ 3} On January 23, 2004, respondent, Brown County Board of Elections, held a hearing on the protest. At the hearing, several protestors testified that they did not believe that Stine resided in Brown County. They had not seen anyone living at the Brown County apartment he claimed that he and his wife resided in, but they had seen him walking his dog near his Clermont County home. In addition, Stine had decorated his Clermont County home but not his Brown County apartment for Christmas. One protestor further testified that when telephone information was called on December 4, 2003, the only listing for Stine was for his Clermont County house.

{¶ 4} At the protest hearing, Stine specified that he and his wife had lived at their $280,000 Clermont County home since 1988 and had remortgaged their home in the summer of 2003 to finance a remodeling project. Stine claimed that he and his wife moved from their Clermont County home to a one-bedroom Brown County apartment he rented from a former client on October 1, 2003. On October 3, 2003, the Brown County Board of Elections accepted Stine's and his wife's application to register to vote in Brown County, and they both voted in the

November 2003 Brown County general election. Stine noted that he had rented the Brown County apartment so that he could run for county engineer.

{¶ 5} Nevertheless, Stine admitted that he lived between the Clermont County and Brown County properties, that he kept his dog at his Clermont County home, that the majority of his and his wife's personal property was at their Clermont County home, that he went to his Clermont County home daily to care for his dog and pick up mail, and that he received more mail at the Clermont County home than the Brown County apartment. Stine owned only two pieces of the furniture at the Brown County apartment: a chair and a television. Stine further testified that he generally spends weekends at his Clermont County house, that he has not listed his Clermont County house for sale and does not intend to do so, and that he did not file a change-of-address form with the Clermont County post office when he rented the Brown County apartment. On an Ohio Bureau of Motor Vehicles change-of-address form, Stine stated that his temporary mailing address until December 30, 2004, would be his Bethel, Clermont County, Ohio work address.

{¶ 6} Furthermore, although Stine claimed that he checks the mail delivered to his Brown County apartment every day, the board sent him two certified letters to that address regarding the protest, which he did not sign for until seven and nine days after they were mailed.

{¶ 7} Moreover, when asked whether he would return to his Clermont County home if he lost the election, Stine said, "I certainly wouldn't live in that apartment on Fagley Road [in Brown County] for the rest of my life" and "if it's a choice between living at Fagley Road and living at my former residence on Frank Willis [Memorial] Road [in Clermont County], * * * I'd return there [i.e., Clermont County] in a minute."

{¶ 8} On January 27, 2004, the board of elections upheld the protest and declared Stine's nominating petition invalid because he was not a resident of Brown County. The board concluded that Stine's permanent habitation is his Clermont County home.

{¶ 9} On January 28, 2004, Stine filed this expedited election matter. Stine requested a writ of mandamus to compel the board of elections to validate his nominating petition and place his name on the March 2, 2004 primary election ballot as the Republican Party candidate for Brown County Engineer. The board answered, and the parties filed briefs and evidence pursuant to S.Ct. Prac.R. X(9).

{¶ 10} This cause is now before the court for a consideration of the merits.

{¶ 11} Stine asserts that he is entitled to the requested writ of mandamus to compel the board to vacate its January 27, 2004 decision and place his name on the March 2, 2004 primary election ballot for Brown County Engineer.

{¶ 12} "We may vacate the decision of a board of elections and grant a writ of mandamus if [Stine] establishes that the board's decision resulted from fraud, corruption, abuse of discretion, or clear disregard of applicable law." *State ex rel. Commt. for the Referendum of Lorain Ord. No. 77–01 v. Lorain Cty. Bd. of Elections,* 96 Ohio St.3d 308, 2002-Ohio-4194, 774 N.E.2d 239, ¶ 23. Stine does not allege fraud or corruption here. Instead, he contends that the board abused its discretion in invalidating his petition. "Abuse of discretion" connotes an unreasonable, arbitrary, or unconscionable decision. *State ex rel. Stevens v. Geauga Cty. Bd. of Elections* (2000), 90 Ohio St.3d 223, 226, 736 N.E.2d 882.

{¶ 13} Stine does not claim that a resident of a different county, e.g., Clermont County, could properly sign and file a declaration of candidacy and nominating petition. See, e.g., *State ex rel. Higgins v. Brown* (1960), 170 Ohio St. 511, 11 O.O.2d 322, 166 N.E.2d 759, paragraph three of the syllabus ("The form of declaration of candidacy provided for by Section 3513.07 Revised Code, indicates a legislative intention to require therein a sworn statement from the candidate that his 'voting residence is in' a specified precinct and that he is a qualified elector in such specified precinct; and that statement relates to the time the declaration of candidacy is signed and sworn to"); R.C. 3513.07; R.C. 3513.05 ("If [the election officials] find that such candidate is not an elector of the state, district, county, or political subdivision in which the candidate seeks a party nomination * * *, the candidate's declaration of candidacy and petition shall be determined to be invalid and shall be rejected"); cf. *State ex rel. Markulin v. Ashtabula Cty. Bd. of Elections* (1992), 65 Ohio St.3d 180, 184, 602 N.E.2d 626, construing a comparable statutory residency requirement for certain candidates ("the candidate must be eligible to vote for the office he or she seeks at the time the statement of candidacy is signed. To be able to sign the statement truthfully, a candidate must be registered at an address within the election district at the time the statement is signed").

{¶ 14} Instead, Stine claims that the board of elections abused its discretion because "[t]he unrefuted competent evidence in this case is that [he] has become an elector in Brown County, Ohio and is eligible to become a candidate for the office of Brown County Engineer."

{¶ 15} Stine's claim is meritless. In election cases involving candidate-residence issues, the court applies R.C. 3503.02. See *State ex rel. Herdman v. Franklin Cty. Bd. of Elections* (1993), 67 Ohio St.3d 593, 595, 621 N.E.2d 1204, and cases cited therein. That statute provides that the person's intent is of great import:

{¶ 16} "All registrars and judges of elections, in determining the residence of a person offering to register or vote, shall be governed by the following rules:

{¶ 17} "(A) That place shall be considered the residence of a person in which the person's habitation is fixed and to which, whenever the person is absent, the person has the intention of returning.

{¶ 18} "(B) A person shall not be considered to have lost the person's residence who leaves the person's home and goes into another state or county of this state, for temporary purposes only, with the intention of returning.

{¶ 19} "(C) A person shall not be considered to have gained a residence in any county of this state into which the person comes for temporary purposes only, without the intention of making such county the permanent place of abode."

{¶ 20} There was substantial, conflicting evidence here concerning Stine's appropriate voting residence. Although he was registered in Brown County and had voted in the November 2003 general election in Brown County at the time he signed his declaration of candidacy, the board of elections properly credited the evidence indicating that Stine intended his Clermont County home as his permanent residence.

{¶ 21} This evidence was not simply, as Stine claims, the speculative musings of the protestors. Stine testified that he did not intend to sell his Clermont County house and that he would return there "in a minute" if he lost the election. He admitted that he has never requested a change of address for his mail in Clermont County and that his dog and a majority of his personal possessions were in the Clermont County house. " 'We will not substitute our judgment for that of a board of elections if there is conflicting evidence on an issue.' " *State ex rel. Commt. for the Referendum of Lorain Ord. No. 77–01*, 96 Ohio St.3d 308, 2002-Ohio-4194, 774 N.E.2d 239, ¶ 47, quoting *State ex rel. Wolfe v. Delaware Cty. Bd. of Elections* (2000), 88 Ohio St.3d 182, 185, 724 N.E.2d 771. We have applied this principle to deny writs challenging decisions of boards of elections on candidate-residence issues. *Herdman*, 67 Ohio St.3d at 596, 621 N.E.2d 1204; *State ex rel. Clinard v. Greene Cty. Bd. of Elections* (1990), 51 Ohio St.3d 87, 88, 554 N.E.2d 895 ("There is no abuse of discretion when the board reaches its decision based on substantial though conflicting evidence").

{¶ 22} Stine further asserts that there is a "serious question as to whether any of the testimony received is competent" because "[n]o protestor testified as to his or her party affiliation and whether he or she was registered as an elector." Stine is correct that R.C. 3513.05, which relates to declarations of candidacy and petitions in primary elections, requires that a protest must be filed by a qualified elector who is a member of the same political party as the candidate and is eligible to vote at the primary election. See *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 17. But unlike the

evidence in *Whitman*, the evidence here establishes that the protestors were qualified to file the protest because they were members of Stine's political party and registered as electors in the county. And Stine did not raise this objection at the protest hearing.

{¶ 23} Therefore, Stine has not established that the board of elections abused its discretion in invalidating his petition. Accordingly, we deny the writ.

Writ denied.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

---

Patrick L. Gregory and Gary Rosenhoffer, for relator.

Thomas F. Grennan, Brown County Prosecuting Attorney, and Mary McMullen, Assistant Prosecuting Attorney, for respondent.