The State ex rel. Duncan v. Portage County Board of Elections et al.

[Cite as *State ex rel. Duncan v. Portage Cty. Bd. of Elections*, 115 Ohio St.3d 405, 2007-Ohio-5346.]

(No. 2007–1715—Submitted October 2, 2007—Decided October 8, 2007.)

Per Curiam.

{¶ 1} This is an expedited election action for a writ of mandamus to compel a board of elections and its members to place a candidate's name on the November 6, 2007 election ballot for a city council seat. Because the board neither abused its discretion nor clearly disregarded applicable law by upholding a protest to the relator's candidacy, we deny the writ.

{¶ 2} Relator, Richard A. Duncan, circulated a petition to be a candidate for an at-large seat on the Aurora City Council. In the petition that he filed with respondent Portage County Board of Elections, Duncan listed an address in Aurora as his permanent residence. The board certified Duncan's name to the election ballot, and George Mazzaro submitted by facsimile transmission a protest challenging Duncan's candidacy for the city council seat, claiming that Duncan is not a legal resident of Aurora.

{¶ 3} On September 11, 2007, the board of elections held a hearing on the protest. Duncan submitted an affidavit in which he stated that in August 2000, he moved from a unit in his parents' duplex in Middlefield, Geauga County, Ohio, to his house in Aurora, Portage County, Ohio, with his oldest daughter and had resided in Aurora since that time. Duncan also submitted several documents, including checks, utility bills, and a federal income tax return, listing his Aurora house as his residence. During the hearing, however, Mazzaro testified that when Duncan ran as a write-in candidate for president of the United States in 2004, he listed the Middlefield address as his residence, and that there is no record that Duncan has ever filed an Aurora income tax return. Mazzaro submitted a copy of a Portage County auditor's property report that he had obtained from the county website for the Aurora house that lists Middlefield as both Duncan's residence address and mailing address.

{¶ 4} Duncan conceded that his driver's license and car registration list the Middlefield address as his residence, that he drove to the protest hearing from

Middlefield, that he stays in Middlefield "off and on," and that he still receives mail at a mailbox that is located at the Middlefield residence. Duncan claims that he stays at the Middlefield unit on occasion to look after his elderly parents. He did not answer a question at the hearing about where he slept most of the time.

{¶ 5} At the hearing's conclusion, the board upheld Mazzaro's protest against Duncan's candidacy and prevented his name from being placed on the November 6, 2007 election ballot as a candidate for the at-large seat on the Aurora City Council.

{¶ 6} Less than a week later, Duncan filed this expedited election case for a writ of mandamus to compel respondents, the Portage County Board of Elections and its members, to place his name on the November 6, 2007 election ballot as a candidate for the at-large Aurora City Council seat. Respondents submitted an answer, and the parties filed evidence and briefs pursuant to the accelerated schedule provided by S.Ct.Prac.R. X(9).

{¶ 7} This cause is now before the court upon the merits.

{¶ 8} To be entitled to the writ, Duncan must establish a clear legal right to certification of his candidacy and placement of his name on the November 6 election ballot, a corresponding clear legal duty on the part of the board of elections to certify his candidacy and place his name on the ballot, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Allen v. Warren Cty. Bd. of Elections*, 115 Ohio St.3d 186, 2007-Ohio-4752, 874 N.E.2d 507, ¶ 8. Given the proximity of the November 6 election, Duncan has established that he lacks an adequate remedy in the ordinary course of law. *State ex rel. Canales–Flores v. Lucas Cty. Bd. of Elections*, 108 Ohio St.3d 129, 2005–Ohio–5642, 841 N.E.2d 757, ¶ 10.

{¶ 9} For the remaining requirements, to establish the requisite legal right and legal duty, Duncan "must prove that the board of elections engaged in fraud, corruption, abuse of discretion, or clear disregard of statutes or other pertinent law." *Rust v. Lucas Cty. Bd. of Elections*, 108 Ohio St.3d 139, 2005–Ohio–5795, 841 N.E.2d 766, ¶ 8.

{¶ 10} Duncan claims that the board of elections abused its discretion and clearly disregarded applicable law by upholding the protest of his candidacy based on his legal residence. "An abuse of discretion implies an unreasonable, arbitrary, or unconscionable attitude." *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections* (1997), 80 Ohio St.3d 302, 305, 686 N.E.2d 238.

{¶ 11} "In election cases involving candidate-residence issues, the court applies R.C. 3503.02." *State ex rel. Stine v. Brown Cty. Bd. of Elections*, 101 Ohio St.3d 252, 2004–Ohio–771, 804 N.E.2d 415, ¶ 15. That statute emphasizes the person's intent to make a place a fixed or permanent place of abode:

{¶ 12} "All registrars and judges of elections, in determining the residence of a person offering to register or vote, shall be governed by the following rules:

{¶ 13} "(A) That place shall be considered the residence of a person in which the person's habitation is fixed and to which, whenever the person is absent, the person has the intention of returning.

{¶ 14} "(B) A person shall not be considered to have lost the person's residence who leaves the person's home and goes into another state or county of this state, for temporary purposes only, with the intention of returning.

{¶ 15} "(C) A person shall not be considered to have gained a residence in any county of this state into which the person comes for temporary purposes only, without the intention of making such county the permanent place of abode."

{¶ 16} There was conflicting evidence before the board of elections here concerning Duncan's appropriate legal residence. Although Duncan claims to have been an Aurora resident since 2000, the evidence indicated that he often stays in Middlefield, he listed Middlefield as his address when he ran as a write-in candidate in 2004, and his driver's license and car registration designate Middlefield as his home address. In addition, the Portage County auditor lists Middlefield in Geauga County as both Duncan's residence address and mailing address, and he refused to respond to a question about where he usually slept. " 'We will not substitute our judgment for that of a board of elections if there is conflicting evidence on an issue.' " *State ex rel. Reese v. Cuyahoga Cty. Bd. of Elections*, 115 Ohio St.3d 126, 2007-Ohio-4588, 873 N.E.2d 1251, ¶ 32, quoting *State ex rel. Wolfe v. Delaware Cty. Bd. of Elections* (2000), 88 Ohio St.3d 182, 185, 724 N.E.2d 771. "We have applied this principle to deny writs challenging decisions of boards of elections on candidate-residence issues." *Stine*, 101 Ohio St.3d 252, 2004-Ohio-771, 804 N.E.2d 415, ¶ 21; *State ex rel. Herdman v. Franklin Cty. Bd. of Elections* (1993), 67 Ohio St.3d 593, 596, 621 N.E.2d 1204.

{¶ 17} Moreover, Duncan failed to submit a complete transcript of the protest hearing when he filed this evidence, which would have normally required us to presume the regularity of the board's determination. See, e.g., *Christy v. Summit Cty. Bd. of Elections* (1996), 77 Ohio St.3d 35, 39, 671 N.E.2d 1; *Hardy v. McFaul*, 103 Ohio St.3d 408, 2004–Ohio–5467, 816 N.E.2d 248, ¶ 10. Respondents, nevertheless, submitted a complete transcript of the protest hearing with their merit brief. A review of the complete transcript reveals that Duncan selectively deleted portions of the transcript from his evidentiary submission that were detrimental to his position on the residence issue, e.g., discussion of the Portage County auditor's property report listing Middlefield as Duncan's address and his refusal to respond to the board's query about where he usually slept.

{¶ 18} Finally, Duncan's claim that the protest was improper and untimely lacks merit. Neither R.C. 3513.263 nor R.C. 3501.39 precludes a board of

elections from filing and considering a protest sent by facsimile transmission. Nor has Duncan provided evidence to support his claim that the protest was filed on September 4. Insofar as the parties appear to agree that the protest was filed on September 4, it was still timely filed under R.C. 3513.263, which requires that written protests against a nominating petition must be filed "not later than the 64th day before the general election." Because the 64th day before the November 6 general election fell on September 3, the Labor Day holiday, protests could be timely filed "on the next succeeding day that is not a Sunday or a legal holiday," i.e., September 4. R.C. 1.14. "We have applied R.C. 1.14 to election cases." *State ex rel. Commt. for the Proposed Ordinance to Repeal Ordinance No. 146–02, W. End Blight Designation v. Lakewood,* 100 Ohio St.3d 252, 2003–Ohio–5771, 798 N.E.2d 362, ¶ 26.

{¶ 19} Even if the protest was untimely, the board was authorized under R.C. 3501.39(A)(3) to sua sponte reject Duncan's candidacy. *State ex rel. O'Beirne v. Geauga Cty. Bd. of Elections* (1997), 80 Ohio St.3d 176, 182, 685 N.E.2d 502 ("the board can refuse to accept a petition even in the absence of a written protest if it determines that it violates the applicable legal requirements"). The board's rejection of Duncan's candidacy would have been timely under R.C. 3501.39(B), which prohibits the board from invalidating any declaration of candidacy or nominating petition under R.C. 3501.39(A)(3) "after the fiftieth day prior to the election at which the candidate seeks nomination to office."

{¶ 20} In conclusion, the board neither abused its discretion nor clearly disregarded applicable law by sustaining Mazzaro's protest and refusing to certify Duncan's name as a candidate for the city council seat at the November 6 election. Therefore, we deny the writ.

*Writ denied.*

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Richard A. Duncan, pro se.

Victor V. Vigluicci, Portage County Prosecuting Attorney, and Leigh S. Prugh, Assistant Prosecuting Attorney, for respondents.