[Cite as *State ex rel. Pace v. Montgomery Cty. Bd. of Elections*, 2013-Ohio-1376.]
IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

|  |  |  |  |
|---|---|---|---|
| STATE, ex rel., WILLIAM PACE | : | Appellate Case No. | 25685 |
|  | : |  |  |
| *Relator* | : |  |  |
|  | : |  |  |
| v. | : |  |  |
|  | : |  |  |
| MONTGOMERY COUNTY BOARD OF ELECTIONS, et al. | : |  |  |
|  | : |  |  |
| *Respondents* | : |  |  |
|  | : |  |  |

---

**DECISION AND FINAL JUDGMENT ENTRY**
April 2, 2013

---

PER CURIAM:

{¶ 1} On March 19, 2013, William Pace filed a complaint for a writ of mandamus and prohibition. Pace seeks a writ of mandamus compelling Respondents, Betty Smith, Director of the Montgomery County Board of Elections, and Steven P. Harsman, Deputy Director of the Montgomery County Board of Elections, to certify Pace's candidacy for Dayton City Commissioner and place his name on the ballot for the May 7, 2013 special election. Pace further seeks an order prohibiting Respondents from printing ballots for the Dayton City Commissioner election pending the court's resolution of this matter.

{¶ 2} On March 22, 2013, Respondents filed an Answer.

{¶ 3} An evidentiary hearing and oral argument were held before the court on March 28, 2013, prior to which both parties filed briefs. The undisputed facts, in relevant part, are as follows: William Pace seeks to be a candidate for the office of Dayton City Commissioner. A special election for the office of Dayton City Commissioner will be held on May 7, 2013. Nominating petitions for this office were due on or before March 8, 2013. Furthermore, pursuant to City of Dayton Charter Section 7(F), an acceptance of candidacy was required to be filed on or before March 13, 2013.

{¶ 4} Pace filed his nominating petition with the board of elections on March 8, 2013. The petition contained 653 verified signatures. Pace did not complete and sign the section of the petitions acknowledging his acceptance of candidacy. By facsimile transmission ("fax"), Pace sent his earlier filed petitions with the acceptance of candidacy section completed and attached to the board of elections on March 13, 2013. The faxed documents were electronically dated as sent on 03/13/2013 at 19:38 (7:38 p.m.).

{¶ 5} The board of elections met at 4:00 p.m. on March 13, 2013, but a quorum was not present. The board met again on the morning of March 14, 2013. Pace was in attendance. The board determined that City of Dayton Charter Section 7(F), in conjunction with R.C. 3513.05, requires that a candidate's acceptance of candidacy be physically delivered before 4:00 p.m. on the date it is due and that fax or email transmission is not permitted. As a result, the board did not certify Pace's nominating petitions.

**{¶ 6}** This Court held a supplemental oral argument on April 1, 2013 to address the following question:

"What purpose of City of Dayton Charter Section 7(F), requiring a timely filed, original signed statement by the candidate accepting his nomination, is not fully served by a timely filed, original signed statement by the candidate as the circulator of one of the candidate's Petition(s) for Nomination of Mayor or Commissioners?"

**{¶ 7}** Pace argues that the totality of the circumstances demonstrates that he "accepted" his candidacy for Dayton City Commissioner. He timely filed nominating petitions that he signed and circulated himself. He testified that he responded to calls from the board of elections regarding the number of valid signatures on his petitions and how his name should be listed on the ballot. He attempted to file an acceptance statement by fax on March 13, 2013 by completing the declaration section on the previously submitted petition forms.

**{¶ 8}** Respondents argue that strict compliance with City of Dayton Charter Section 7(F) is necessary to promote fairness and avoid favoritism in the election process.

**{¶ 9}** Upon due consideration of the foregoing, we find that Respondents did not abuse their discretion in refusing to certify Pace's candidacy for failure to properly file his acceptance of candidacy.

{¶ 10} To be entitled to the requested writ of mandamus, Pace must establish a clear legal right to the relief requested, i.e., a clear legal right to the placement of his name on the May 7, 2013 special election ballot; a clear legal duty on the part of Respondents to perform the act, i.e., a corresponding duty of the board of elections and its members to place Pace's name on the ballot; and the lack of a plain and adequate remedy in the ordinary course of law. *State ex rel. Grounds v. Hocking Cty. Bd. of Elections*, 117 Ohio St.3d 116, 2008-Ohio-566, 881 N.E.2d 1252, ¶ 10, citing *State ex rel. Duncan v. Portage Cty. Bd. of Elections*, 115 Ohio St.3d 405, 2007-Ohio-5346, 875 N.E.2d 578, ¶ 8. As the election at issue is approximately one month away, the court finds that Pace lacks an adequate remedy in the ordinary course of law. *Id*., citing *State ex rel. Columbia Res. Ltd. v. Lorain Cty. Bd. of Elections*, 111 Ohio St.3d 167, 2006-Ohio-5019, 855 N.E.2d 815, ¶ 28.

{¶ 11} In order to establish the clear legal right and legal duty, as provided above, Pace must further " 'prove that the board of elections engaged in fraud, corruption, abuse of discretion, or clear disregard of statutes or other pertinent law.' " *State ex rel. Greene v. Montgomery Cty. Bd. of Elections*, 121 Ohio St.3d 631, 2009-Ohio-1716, 907 N.E.2d 300, ¶ 11, quoting *Rust v. Lucas Cty. Bd. of Elections*, 108 Ohio St.3d 139, 2005-Ohio-5795, 841 N.E.2d 766, ¶ 8. Pace does not raise claims of fraud or corruption, so the dispositive issue is whether Respondents abused their discretion or clearly disregarded the applicable law when refusing to certify Pace's nominating petitions because he failed to physically deliver an ink-signed original acceptance of candidacy to the board of elections by 4:00 p.m. on March 13, 2013.

**{¶ 12}** Section 7(F) of the Dayton City Charter requires that candidates file an acceptance of candidacy no later than 55 days before the election and in the absence thereof, the name of the candidate shall not appear on the ballot or voting machine:

Any person whose name has been submitted for candidacy by any [nominating petition] shall file his acceptance of such candidacy with the election authorities not later than 55 days before the day of the primary election or special election, and in absence of such acceptance the name of the candidate shall not appear on the ballot or voting machines.

**{¶ 13}** The acceptance requirement in Section 7(F) of the Dayton Charter is the equivalent of a declaration of candidacy under the statutes relating to elections. *State ex rel. Troy v. Bd. of Elections of Lake Cty.*, 170 Ohio St. 17, 18, 161 N.E.2d 777 (1959) (holding that a declaration of candidacy is an adequate substitution for an acceptance of candidacy under a municipal charter).

**{¶ 14}** Under circumstances similar to those in the case before us, the Supreme Court of Ohio affirmed the Court of Appeals of Summit County in its denial of a writ of mandamus. *See State ex rel. Raines v. Tobin,* 138 Ohio St. 468, 35 N.E.2d 779 (1941). In *Raines*, the candidate failed to sign the declaration of candidacy in the blank space at the end of the declaration, but did sign his name when subscribing to and acknowledging the declaration before a notary

public. *Id.* at 468-69. The basis of the denial of the writ by the appellate court was that "the defect in the declaration was not merely technical." *Id.* at 469. The Supreme Court of Ohio agreed, stating that:

No duty being specifically enjoined by law upon the board of elections to place the name of appellant upon the ballot in the absence of a proper declaration of candidacy, the judgment of the Court of Appeals, denying a writ of mandamus, is affirmed. *Id.*

{¶ 15} In cases following *Raines*, the Supreme Court has leaned toward applying a test of substantial compliance to avoid situations where participation in the election process is thwarted by rigid application of technical requirements:

The public policy which favors free competitive elections, in which the electorate has the opportunity to make a choice between candidates, outweighs the arguments for absolute compliance with each technical requirement in the petition form, where the statute requires only substantial compliance, where, in fact, the only omission cannot possibly mislead any petition signer or elector, where there is no claim of fraud or deception, and where there is sufficient substantial compliance to permit the board of elections, based upon the prima facie evidence appearing on the face of the jurat which is a part of the petition paper, to determine the petition to be

> valid.

*Stern v. Bd. of Elections of Cuyahoga County*, 14 Ohio St.2d 175, 184, 237 N.E.2d 313 (1968) (finding that a candidate's declaration of candidacy and nominating petition substantially complies with statutory requirements, where the notary public who administered the oath to the circulator of one part-petition inadvertently omitted to subscribe his handwritten signature to the jurat alongside his printed name, which he had stamped on the jurat, and inadvertently omitted to imprint his seal upon such jurat).

{¶ 16} There is no dispute between the parties that technical, literal compliance with the acceptance requirement is not present here. The question we posed to the parties is whether Pace, by timely filing his nominating petitions with his original signature as the circulator, substantially complied with the requirement of an acceptance. Whether there has been substantial compliance with a statutory requirement should be judged in relation to the purpose of the requirement.

{¶ 17} The evident purpose of the acceptance requirement in Section 7(F) of the Dayton Charter is to ensure, by means of a candidate's original signature, in ink, on a writing filed with the proper authority, that the candidate does, in fact, desire to be a candidate for the office sought. The first clause of the statement reads: "I, _____, hereby accept the Candidacy for City of Dayton Mayor or Commissioner." An additional purpose of the acceptance requirement is to

certify that the candidate will qualify for the office sought if nominated and elected. The second clause of the statement reads: "I do further certify that if nominated and elected to said office, I will qualify for said office according to law." To qualify for the office of Dayton City Commissioner, Section 6 of the Dayton Charter requires:

(A) Candidates for and members of the Commission shall be residents of the city and have the qualifications of electors therein.

(B) No member of the Commission, other officer, or employee shall hold any other public office except, an office which is essential to performing the duties of their position with the city, or as an official representative of the city, a member of the State Militia or Reserve Component of the United States Armed Forces, or a Notary Public.

(C) No member of the Commission, other officer, or employee shall hold employment with the State of Ohio, or a county, township, or municipal government. Employment in a public school system or other educational institution shall not be a violation of this section.

(D) Any person who shall cease to possess any of the qualifications of this subsection shall forthwith forfeit his or her office or employment with the city.

{¶ 18} The above-stated purposes of the acceptance requirement are not implicit in

signing a petition as circulator.   R.C. 3501.38(E)(1) states:

> On each petition paper, the circulator shall indicate the number of signatures contained on it, and shall sign a statement made under penalty of election falsification that the circulator witnessed the affixing of every signature, that all signers were to the best of the circulator's knowledge and belief qualified to sign, and that every signature is to the best of the circulator's knowledge and belief the signature of the person whose signature it purports to be * * * .

{¶ 19}   The state law requirement regarding the circulator's statement on petitions serves to prevent "fraud by supplying the circulator's attestation that the circulator witnessed each of the signatures on the part-petition and that the signatures are genuine."  *State ex rel. Murray v. Scioto Cty. Bd. of Elections*, 127 Ohio St.3d 280, 2010-Ohio-5846, 939 N.E.2d 157, ¶ 48.  In similar fashion, Section 7(B) of the Dayton Charter requires that an affidavit of the circulator be attached to each nominating petition stating the number of signers of such paper, and that each signature appended thereto was made in the circulator's presence and is the genuine signature of the person whose name it purports to be.

{¶ 20} Finding that one purpose of the acceptance requirement – the commitment to qualify for the office – bears no resemblance to the purpose of the circulator's signature requirement, we hold that Pace has not substantially complied with Section 7(F) of the Dayton

Charter.

{¶ 21} We further conclude that Pace's attempt to cure the acceptance defect by fax filing his nominating petitions, with the acceptance section completed, does not comply with the original signature requirement of R.C. 3501.38(B), which requires that all signatures on declarations of candidacy and nominating petitions be affixed in ink. The board of elections properly rejected Pace's petitions for this reason.

{¶ 22} The law gives a board of elections discretion to decide these issues. In *State ex rel. Richardson v. Bd. of Elections of Montgomery Cty., Ohio*, 2d Dist. Montgomery No. 6543, 1979 WL 208574 (Oct. 16, 1979), this Court stated the following:

In *State, ex rel. Hanna v. Milburn*, 170 Ohio St. 9, 161 N.E.2d 891, the Supreme Court of Ohio enunciated the test to be applied to cases of this kind as follows:

"The test for *reversing* a decision of a board of elections is not necessarily whether this court agrees or disagrees with such decision, but it is whether the decision of the board of elections is procured by fraud or corruption, or whether there has been a flagrant misinterpretation of a statute or a clear disregard of legal provisions applicable thereto. See *State, ex rel. Flynn v. Board of Elections of Cuyahoga County*, 164 Ohio St. 193, 199, 129 N.E.2d 623; 164 Ohio St. 193, 129

N.E.2d 623, and cases cited."

*Richardson* at *3-4 (Kerns, J., concurring).

{¶ 23} Based on the foregoing, this Court finds that Respondents did not abuse their discretion in refusing to certify Pace's candidacy for the office of Dayton City Commissioner. Pace failed to comply with Section 7(F) of the Dayton Charter and related statutory provisions.

{¶ 24} Accordingly, Pace is not entitled to the requested extraordinary relief in mandamus or prohibition. The March 19, 2013 complaint for a writ of mandamus and prohibition is hereby DENIED.

{¶ 25} SO ORDERED.

_____
MIKE FAIN, Presiding Judge

_____
JEFFREY E. FROELICH, Judge

_____

JEFFREY M. WELBAUM, Judge

To The Clerk: Within three (3) days of entering this judgment on the journal, you are directed to serve on all parties not in default for failure to appear notice of the judgment and the date of its entry upon the journal, pursuant to Civ.R. 58(B).

_____

MIKE FAIN, Presiding Judge

Copies provided by the court to:

John Cumming
Maureen Yuhas
Attorneys for Respondents
301 W. Third Street, 5th Floor
Dayton, Ohio 45422

C. Ralph Wilcoxson, II
Attorney for Relator
575 S. Dixie Drive
Vandalia, Ohio 45377

CA3/JN